**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**

**SOUTHERN DISTRICT OF GEORGIA**

**SAVANNAH DIVISION**

**FILED**
Dana Wilson, Clerk
United States Bankruptcy Court
Savannah, Georgia
*5:55 pm, Sep 30 2026*

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| Rhondie Belton and, | ) | |
| Lenora Smith Belton, | ) | Number 19-40487-EJC |
| *Debtors*. | ) | |
| | ) | |

**OPINION ON MOTION TO REOPEN**

Before the Court is the Motion to Reopen Chapter 13 Case (the "Motion to Reopen") filed by the Debtors in this case. (Dckt. 81). The matter came on for hearing on July 1, 2026. The Court heard testimony from the Debtor, Rhondie Belton. The trustee did not oppose the relief sought. No other party in interest opposed the relief sought by the Debtors' motion. Consistent with the findings of fact and conclusions of law set forth herein, the Court will deny the motion to reopen the case pursuant to 11 U.S.C. § 350(b).

## I. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C.

§ 157(b)(2)(A). The Court makes the following findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. Findings of Fact

A. Confirmed Plan Completed by Debtors

The Debtors commenced this Chapter 13 case on April 3, 2019, and the Court confirmed their plan on August 23, 2019. (Dckt. 28). Under the terms of their plan of reorganization, the Debtors proposed to pay $480.00 per month for the duration of the plan. The Debtors' plan was confirmed and as reflected in the Trustee's Report of Confirmation, it was anticipated that the plan would require a minimum of 55 monthly payments of $480.00. (Dckt. 32). On November 1, 2023, the Chapter 13 trustee filed a Notice of Completion of Plan Payments (Dckt. 43) and further notified Mr. Belton's employer, Smyrna Ready Mix Concrete LLC, to discontinue wage withholdings from Mr. Belton's payroll. (Dckt. 42). In short, the Debtors fulfilled all their requirements under their chapter 13 plan and on December 5, 2023, the Debtors received their discharge. (Dckt. 48). On January 18, 2024, the trustee filed his Chapter 13 Trustee's Final Report (Dckt. 50) reflecting that the case had been pending for a total of 57 months and that the Debtors had made all 55 required plan payments. The Debtors were able to pay in full a secured claim on a vehicle

and to pay in full a priority tax claim owed to the IRS. The Debtors also paid a pro-rata dividend to unsecured creditors.

B. Case Reopened to Approve Settlement of Automobile Accident Cases

Just before the Court formally closed the case, on February 6, 2024, the Debtors filed separate applications to employ[1] Brian Clements of the Ken Nugent law firm to represent them in a personal injury case arising out of an automobile accident that occurred on June 14, 2023[2]. (Dckt. 51, 52). On February 16, 2024, the Debtors amended their Schedule B to disclose the potential causes of action, listing the values as "unknown". (Dckt. 56, p. 5). The Debtors did not seek at that time to claim any exemptions in those merely potential assets. On February 21, 2024, the Court granted (subject to a 21-day period for parties in interest to object) the applications to employ Mr. Clements to pursue those auto accident claims. (Dckt. 57). Then on March 8, 2024, based on the Debtors' completion of their confirmed plan obligations and the Chapter 13 Trustee's Final Report (Dckt. 50), the Court entered a Final Decree closing the Debtors' chapter 13 case.

Six months later, on October 29, 2024, the Debtors filed their first motion to reopen their chapter 13 case and requested an expedited hearing to address the

---

[1] The Debtors each signed employment agreements with the Ken Nugent Law Firm on June 17, 2023. (Dckt. 51, 52).

[2] As discussed below, the post-confirmation causes of action were property of the estate under 11 U.S.C. § 541 and § 1306.

recently disclosed causes of action arising out of the 2023 automobile accident. (Dckt. 60). The Debtors sought permission to amend their schedules to disclose the settlement value of their claims and to have the Court approve their settlements. The Court conducted a hearing on the motion on November 6, 2024, and, after hearing from both Debtors' counsel and counsel for the Chapter 13 trustee, announced that it would reopen the case on the grounds asserted. On December 9, 2024, the Court entered a consent order which recited in part:

> "[T]he Debtors' Chapter 13 case is reopened so that they may amend their schedules and seek approval of a recently reached settlement for their personal injury claim. It is further ORDERED that any non-exempt proceeds from the Debtors' claims shall be disbursed to unsecured creditors with allowed claims. It is further ORDERED that, pursuant to Fed. R. Bankr. P. 5010, O. Byron Meredith, III shall be reappointed as Chapter 13 trustee to protect the interest of creditors and . . . ensure efficient administration of the case. (Dckt. 66).

On December 6, 2024, the Debtors filed an application to employ Minkah Merritt as new counsel for these automobile accident claims that arose on June 14, 2023. (Dckt. 65). On December 10, 2024, the Debtors filed a Motion to Approve Settlement of those claims ($25,000.00 for Mr. Belton and $40,000.0 for Mrs. Belton) (Dckt. 67). Mr. Belton amended Schedule C to claim as exempt the entire amount of his net settlement of $12,614.07, after attorney's fees and medical bills. Mrs. Belton initially

claimed an exemption of $23,188.01 in her settlement. (Dckt. 68, p. 5). However, her exemption was later limited to $21,200.00, leaving $1,988.01 to be turned over to the Chapter 13 trustee for distribution to unsecured creditors. (Dckt. 76)

On December 16, 2025, the trustee[3] filed another Final Report reflecting that an additional distribution of $1,789.70 had been made to creditors from these non-exempt proceeds, and $198.31 paid in additional trustee commissions. Then on January 22, 2026, the Court entered a Final Decree in this case for the second time. (Dckt. 80). Neither the Debtors nor the trustee had moved pursuant to 11 U.S.C. § 1329 to modify the Debtors' plan to make this supplemental distribution to creditors. Indeed, as discussed later in this opinion, modification pursuant to 11 U.S.C. § 1329 was not possible as of the reopening of the case in December, 2024, because of the five-year limit on plan duration[4]. The Debtors simply agreed to turn over these funds to the trustee for a one-time distribution to unsecured creditors. No party in interest objected to this procedure.

C. <u>The Explosion Case</u>

On November 7, 2022, the Debtor, Rhondie Belton, was working at a job site in Brunswick, Georgia for his employer, Smyrna Ready Mix Concrete (Tr.[5] 11, line

---

[3] On February 26, 2025, the trustee was (belatedly) reappointed in the case. (Dckt. 78).

[4] 11 U.S.C. See, *In re Koffah*, 676 B.R. 907 (Bankr. S.D. Ga. 2025)(Coleman, J.)

[5] Page and line references to the transcript of the Court's hearing of July 1, 2026 are designated "Tr. __, line __". (Dckt. 85)

13), when three explosions occurred in succession (over a 2 to 3-hour period, beginning at 3:56 a.m.) at a nearby plant owned by Symrise, Inc. (Tr. 10, 17-18). Mr. Belton was working outside when the explosions occurred, and his supervisors did not immediately give him permission to evacuate the site even after the second explosion. He was "in the fallout zone of the chemical fire, the smoke, the ash, the carcinogens" from the fires that erupted. (Tr. 18). Mr. Belton testified that he knew from his years in the Navy that they were having trouble putting out the fire. (Tr. 18). Some weeks or days later Mr. Belton began experiencing symptoms that caused him to seek medical treatment. He was hospitalized on or about December 22, 2022, where he stayed for about ten days. (Tr. 15, line 5). Mr. Belton testified about his hospital stay:

> Q: And do you recall what treatment you received at the hospital?
>
> A: Yes, sir. Blood tests, numerous tests, several tests. X-rays, CAT scans, CT scans, trying to rule out everything else. HIV test. It was finally determined that it was something going on with my lungs. I had blood calcium level of 18, which is lethal, from what I understand now. I lost about 50 pounds. My equilibrium was off, no appetite.
>
> (Tr. 15, lines 15 – 22).

Mr. Belton was diagnosed with certain lung-related conditions, more specifically, stage 2 pulmonary sarcoidosis. (Tr. 4, lines 18-19). His symptoms persist. He

attributes his condition to his exposure to the three explosions. He apparently has an expert witness who will also make that connection. (Tr. 26).

Mr. Belton sought legal advice regarding his injuries from the explosions in early January 2023, in the person of attorney Howard Spiva[6]. By October 2023, the Debtors had made their last payment required under their confirmed plan. Mr. Spiva never filed suit on behalf of Mr. and Mrs. Belton. Instead, he referred the case 18 months later to the law firm of Manley Shipley, LLP in August 2024. (Tr. 21, 22). The Manly firm made inquiry of the Debtor regarding any pending bankruptcy case and Mr. Belton advised them, accurately, that his case had been discharged[7]. (Tr. 6, lines 18-22). The Manly firm filed suit ("the district court litigation") on behalf of Mr. and Mrs. Belton in the United States District Court for the Southern District of Georgia in October 2024, within the statute of limitations. That litigation has been pursued through discovery, retention of expert witnesses, and other pretrial matters. The Defendants then filed a Motion for Summary Judgment and raised, among other grounds, the defense of judicial estoppel, based presumably on the failure of the debtors to disclose the existence of their claims arising from the explosions in November 2022. (Tr. 5)

[6] Like the Ken Nugent law firm handling the June 14, 2023, auto accident cases, Spiva did not immediately seek approval of his employment from the bankruptcy court, nor did he ever do so.

[7] The Debtors received their discharge in this case on December 5, 2023. (Dckt. 48).

D. Motion to Reopen Bankruptcy Case

On May 28, 2026, the Debtors filed the pending Motion to Reopen Chapter 13 Case pursuant to 11 U.S.C. § 350(b)[8]. (Dckt. 81). In that motion the Debtors indicated "they are seeking an order reopening this Chapter 13 case for the purpose[9] of filing amended schedules disclosing the existence of" the claims arising from the November 7, 2022, explosion. (Dckt. 81). While not explicitly stated in the Motion to Reopen, an additional if not the primary reason for reopening the case would be to avoid the judicial estoppel argument being advanced by the defendant in the district court litigation. As counsel stated at the July 1, 2026, hearing, once the case is reopened, they would seek approval from this Court to represent the Debtors in that district court litigation. (Tr. 5, lines 17-18). It was also suggested at the hearing that the Debtors would seek approval of any settlement (Tr. 3, lines 20-22), and possibly the distribution to creditors as had been done with the auto accident settlements. The Debtors paid the fee for reopening the case and the Court scheduled the matter for hearing. (Dckt. 81, 82).

[8] Section 350 provides: (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case. (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

[9] Although not stated in their motion, Debtors' counsel suggested at the hearing that any recovery would be used to pay creditors in full. (Tr. 31, lines 23-25 and p. 32, lines 1-2).

The Court conducted a hearing on July 1, 2026, and took testimony from Mr. Belton regarding his employment prior to the November 2022 incident, the circumstances of the explosions, his medical issues arising immediately thereafter and his course of treatment for his injuries. The Court heard argument from bankruptcy counsel, district court counsel, and the attorney for the Chapter 13 trustee.

The hearing also revealed information about the legal representation the Debtors had received. Importantly, the attorneys representing the Debtors in their pending district court litigation are not the ones who handled the Debtors' motor vehicle accident cases that arose in June 2023. It does not appear that any of the lawyers, bankruptcy counsel included, were always aware of what the other lawyers were doing for Mr. and Mrs. Belton. Obviously, attorney Brian Clements of the Ken Nugent law firm, who moved to reopen the bankruptcy case in February 2024 to address the potential claims arising from the June 2023 auto accident, was not aware of the more serious cause of action arising from the explosions in November 2022. Mr. Spiva, in turn, was either not aware of the Debtors' pending bankruptcy case or was unaware of the possible need to disclose the cause of action to the bankruptcy court. As for the firm of Manly Shipley, LLP, it is apparent that they did not reach out to bankruptcy counsel either, to confirm the status of the Debtors' bankruptcy case, until the filing of the motion now pending before the Court.

The Court had an opportunity to evaluate Mr. Belton's demeanor, credibility, communication skills, and memory. The Court finds no indication that Mr. Belton intentionally failed to disclose his November 2022 cause of action to his bankruptcy counsel or to the bankruptcy court. Both legal proceedings are literally matters of public record in this district. No lawyer testified or suggested that Mr. and Mrs. Belton withheld any information from any of their four lawyers. The Debtors did not conceal their bankruptcy case. It is easily accessible to counsel. Nor would they have any incentive to do so as the Court will address below.

At the conclusion of the July 1, 2026, hearing, the Court took the matter under advisement.

## III. <u>Conclusions of Law</u>

### A. <u>Reopening a Bankruptcy Case Under 11 U.S.C. § 350(b)</u>

Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010. Section 350(b), in turn, states that "[a] case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (emphasis added). Here, the Debtors seek to reopen this case for four reasons: (i) to amend their schedules to disclose their claims arising from the November 7, 2022, explosions which caused damage to Mr. Belton's lungs; (ii) to seek approval of Manly Shipley, LLP to represent the Debtors in the district

court litigation; (iii) to seek approval of any settlement of the Debtors' claims against Symrise, Inc.; and (iv) for a possible supplemental distribution to creditors[10].

Reopening is a ministerial act. *In re Mohammed*, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015). "Merely granting a motion to reopen does not afford the parties any substantive relief, but rather provides the opportunity to request further relief." *In re Clary*, 440 B.R. 122, 123 (Bankr. E.D. Va. 2010) (quoting *Horizon Aviation of Va., Inc. v. Alexander (In re Alexander)*, 296 B.R. 380, 382 (E.D. Va. 2003)). The moving party has the burden of demonstrating sufficient cause to reopen. *In re Dalezios*, 507 B.R. 54, 58 (Bankr. D. Mass. 2014). "The decision to reopen should be made on a case-by-case basis based on the particular circumstances and equities of [the] case, and should be left to the sole discretion of [the] bankruptcy court." *Id.* (quoting *Diaz-Nieves v. Irizarry (In re Irizarry)*, No. 6:10-bk-18876-KSJ, 2012 WL 592886, at *1 (Bankr. M.D. Fla. Feb. 17, 2012)). Some factors that courts consider include the following:

> (1) the length of time that the case was closed;
>
> (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;

[10] Neither the Debtors' motion nor comments of counsel suggested that such distribution would be based on the modification procedures of 11 U.S.C. § 1329. Rather, counsel suggested that any recovery could simply be paid to unsecured creditors to satisfy those claims in full. (Tr. 31-32).

> (3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;
>
> (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;
>
> (5) the extent of the benefit to any party by reopening; and
>
> (6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017) (citing *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at *4–5 (Bankr. S.D.N.Y. Apr. 20, 2016)). Ultimately, the court should "consider the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." *In re Nasralla*, 653 B.R. 247, 251 (Bankr. E.D. Mich. 2023) (citation modified).

Of the factors listed above, the first would support reopening since the case was only recently closed (for the second time) on January 22, 2026. (Dckt. 80). Likewise, the second factor does not weigh against reopening since no non-bankruptcy forum has jurisdiction over: the disclosures to be made through amended schedules, the approval of retention of counsel, or the possible supplemental distributions to creditors. The third factor is inapplicable as no "prior litigation in the bankruptcy court has determined that another court would be the appropriate forum". As to the fourth factor recited, no party in interest would be prejudiced by the mere reopening. The Defendant in the district court litigation is not a party in interest in

the bankruptcy case and is still at liberty to argue the merits (if any) of its judicial estoppel defense. The fifth factor arguably supports reopening as it would allow the Debtors to formally disclose in amended schedules what has already been disclosed to the defendant in the district court litigation and possibly provide an opportunity to pay in full the remaining amounts owed to creditors that have otherwise been discharged.

Finally, the last factor named above requires the most attention: whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted. Stated another way, would the Court be able to grant any relief upon reopening? Numerous courts have explained that "[i]f reopening the case would be a futile act because the objective cannot be achieved, generally, the case should not be reopened." *Clary*, 440 B.R. at 123. *See also In re AP Framing, Inc.*, 669 B.R. 894, 898 (Bankr. N.D. Ga. 2025) ("[A] "[c]ourt will not reopen [a] case if doing so would be futile[.]"); *Roberts v. Vara (In re Roberts)*, 659 B.R. 271, 278–79 (Bankr. W.D. Pa. 2024) ("[A] bankruptcy case should not be reopened if it would be futile or a waste of judicial resources to do so."); *In re Oglesby*, 519 B.R. 699, 703 (Bankr. N.D. Ohio 2014) ("[W]here the court cannot afford the moving party the requested relief, the court does not abuse its discretion in refusing to reopen the case."). The question under this sixth factor, then, is whether reopening this case would be futile

or a waste of judicial resources, which requires the Court to examine the nature of the substantive relief the Debtor would seek upon reopening.

But the Court will consider first the Debtors' desire to amend their schedules to disclose the cause of action against Symrise, Inc. To understand that we begin with the concept of "property of the estate" in a chapter 13 case under 11 U.S.C. § 1306.

B. The Personal Injury Claims Arising from the Explosions Were Property of the Bankruptcy Estate

The law is clear that the Debtors' personal injury claims, which arose post-confirmation on November 7, 2022, were property of the bankruptcy estate in this Chapter 13 case. The starting point for determining whether property belongs to the estate is § 541(a)(1), which states that commencing a bankruptcy case "creates an estate" comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a)(1)'s scope is "broad" and includes causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983); *Estate of Arlene Townsend v. Berman (In re Fundamental Long Term Care, Inc.)*, 81 F.4th 1264, 1284 (11th Cir. 2023).

In a Chapter 7 case, § 541 alone governs which property interests of the debtor become property of the bankruptcy estate, and that analysis is generally straightforward. With certain statutory exceptions, "a Chapter 7 estate does not

include . . . the assets [a debtor] acquires *after* the bankruptcy filing."[11] *Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015) (emphasis in original). *See also Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1237 (11th Cir. 2006) (under § 541(a)(1), "property of the [bankruptcy] estate is property the debtor had when the bankruptcy case commence[d], not property he acquires thereafter").

In a Chapter 13 case, however, § 1306(a) provides that "[p]roperty of the estate includes, in addition to the property specified in section 541 . . . (1) all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . whichever occurs first[.]" 11 U.S.C. § 1306(a)(1). This provision thus expands the bankruptcy estate's scope in Chapter 13 cases beyond what § 541(a) specifies, such that "the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any . . . property acquired after filing." *Viegelahn*, 575 U.S. at 514.

---

[11] By its terms, § 541(a) provides that certain after-acquired property *does* become property of the bankruptcy estate. Under § 541(a)(5), the estate includes "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—(A) by bequest, devise, or inheritance; (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or (C) as a beneficiary of a life insurance policy or of a death benefit plan." 11 U.S.C. § 541(a)(5). Under § 541(a)(6), the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). And under § 541(a)(7), it includes "[a]ny interest in property that *the estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).

Complicating matters is § 1327(b), which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). As the Court has recounted in detail in a recent case and will not belabor here, courts have struggled to harmonize §§ 1306(a) and 1327(b). *See Macon v. Meredith (In re Macon)*, 669 B.R. 626, 644–46 (Bankr. S.D. Ga. 2025) (Coleman, J.). For purposes of this case, it suffices to say that the Eleventh Circuit has conclusively reconciled those Code sections in this jurisdiction in the case *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1242 (11th Cir. 2008).

In *Waldron*, six months after the Chapter 13 debtors attained plan confirmation, the husband-debtor sustained personal injuries in a car accident. The husband sought and received bankruptcy court approval of his settlement with the tortfeasor. But when the husband moved for permission to settle his claims for underinsured motorist benefits without further court approval (of, presumably, the amount of the settlement), the bankruptcy court ruled that the underinsured motorist claims were property of the bankruptcy estate and ordered the debtors to amend their schedule of assets to reflect those claims. *Id.* at 1241. The district court affirmed.

On appeal, the Eleventh Circuit adopted what is sometimes called the "estate replenishment," or the "modified estate preservation," approach to reconciling §§ 1306(a) and 1327(b). Under that approach, "some property of the estate is vested in

the debtor at confirmation, under [§] 1327(b), but property acquired later vests in the estate, under [§] 1306(a), until the case ends or is converted[.]" *Id.* at 1243. In the court's view, "[n]ew assets that a debtor acquires unexpectedly after confirmation"—like the husband's underinsured motorist claims—"by definition do not exist at confirmation and cannot be returned to him then" by operation of § 1327(b). *Id.* Put another way:

> While the case is pending, the post-petition property . . . [is] added to the estate until confirmation, the event that triggers [§] 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting" is free and clear of the claims or interests of creditors provided for by the plan, [§] 1327(b), (c). Finally, the . . . estate once again accumulates property by operation of [§] 1306(a) until the case is "closed, dismissed, or converted."

*Id.* (quoting *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill. 1997)). Applying this estate replenishment approach, the court held that the husband's underinsured motorist claims were property of the bankruptcy estate because they were new assets acquired post-confirmation. *Id.*

So too here. The Court confirmed the Debtors' plan on August 23, 2019, and Mr. Belton sustained his explosion injuries giving rise to his personal injury claim on November 7, 2022—post-confirmation. Thus, the personal injury claim, like the underinsured motorist claims in *Waldron*, was a new asset acquired unexpectedly after confirmation. It was therefore property of the bankruptcy estate. And, as the

Debtors asserted in their Motion to Reopen, they seek to reopen this case "for the purpose of filing amended schedules disclosing the existence of these claims" arising from the November 2022 explosion in which Mr. Belton was injured.

As the Eleventh Circuit has explained, "[t]he disclosure of postconfirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors." *Waldron,* 536 F.3d at 1245. "When a debtor discloses assets acquired after confirmation, creditors may move the bankruptcy court to modify the plan to increase payments made by the debtor to satisfy a larger percentage of the creditors' claims." *Id.*

But plan modification, by debtors, creditors, or trustees, is available only under limited circumstances, as addressed below.

C. <u>The Debtors' Plan Can No Longer be Modified under § 1329</u>

In a Chapter 13 case, the debtor "must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015). Whether the "applicable commitment period" lasts for three or five years depends on whether the debtor's income is below-median or above-median. 11 U.S.C. § 1325(b)(4). In either case, the maximum duration of a Chapter 13 plan is five years. *See* 11 U.S.C. § 1322(d)(1)-(2) (providing that an above-median debtor's plan "may not provide for payments over a period that is longer than 5 years," and "the court may not approve," for a

below-median debtor, "a period that is longer than 5 years"). *See also Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 878 (11th Cir. 2010) (noting that § 1322(d) "sets the absolute maximum time period of a Chapter 13 bankruptcy plan for an above[-]median income debtor at five years, no exceptions.").

The purpose of requiring Chapter 13 debtors to disclose substantial assets acquired post-confirmation, as mentioned, is to "give[] the trustee and creditors a meaningful right to request, under [§] 1329, a modification of the debtor's plan to pay his creditors." *Waldron*, 536 F.3d at 1245. Modification is thus the normal mechanism enabling creditors to share in a new asset acquired by the debtor post-confirmation. The problem here is that it's too late to modify the Debtors' plan.

Modification of a confirmed Chapter 13 plan is governed by § 1329(a), which provides in relevant part as follows:

> (a) At any time after confirmation of the plan *but before the completion of payments under such plan*, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments;
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . . .

11 U.S.C. § 1329(a) (emphasis added). Post-confirmation plan modification must alter the confirmed plan in one of the four ways listed in § 1329(a). *Whaley v. Guillen (In re Guillen)*, 972 F.3d 1221, 1225 (11th Cir. 2020) ("Section 1329 permits debtors, unsecured creditors, and trustees to modify confirmed plans in any one of four ways[.]"). Thus, a potential modification would increase the amount pledged to unsecured creditors to account for any non-exempt proceeds from the personal injury claim.[12]

Two provisions of § 1329 bar modification in this case. First, § 1329(a) permits modification "[a]t any time after confirmation of the [original] plan but

[12] It is sometimes said that "the determination that a postconfirmation asset is property of the estate requires an increase in payments to creditors to meet the best interest of creditors test" of § 1325(a)(4). Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel, & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 11:13 (June 2025 ed.). But strictly speaking, the best interest test (also called the liquidation test), which requires that unsecured creditors receive payments with a total value at least equal to the amount they would receive in a Chapter 7 liquidation, is a *prerequisite* of confirmation, including confirmation of a modified plan. *See* 11 U.S.C. § 1329(b)(1). It does not, by itself, *require* a plan to be modified. Arguably, moreover, "[p]roperty a debtor acquires after confirmation . . . is not properly considered in applying the best interest test to a postconfirmation modification because [] § 348(f)(1) excludes postconfirmation property from the Chapter 7 estate that is the subject of the hypothetical liquidation under the best interest test." *Chapter 13 Practice & Procedure* § 11:13. *See also In re Hill*, 652 B.R. 212 (Bankr. S.D. Ala. 2023) (concluding that "§ 348(f), not § 1306, controls the property to be included in the liquidation analysis at modification[.]"). Instead, "modification to require the payment of proceeds from postconfirmation property, or additional plan payments to account for its value, to creditors may be permissible based on the ability-to-pay policy." *Chapter 13 Practice & Procedure* § 11:13. The Eleventh Circuit referenced the ability-to-pay standard in *Waldron*, explaining that Congress intended "that the debtor repay his creditors to the extent of his capability during the Chapter 13 period." *Waldron*, 536 F.3d at 1246 (citation modified). *See also Hill*, 652 B.R. at 222–23.

before the completion of payments under such plan[.]" 11 U.S.C. § 1329(a). "The provision plainly sets forth a temporal requirement[.]" *In re Stanke*, 638 B.R. 571, 574 (Bankr. N.D. Tex. 2022). "Consistent with the plain language of 11 U.S.C. § 1329(a) . . . 'it is largely undisputed' that a plan may not be modified once the debtor has completed payments under that plan." *In re Ivery*, 667 B.R. 317, 320 (Bankr. N.D. Miss. 2025) (quoting *Meza v. Truman (In re Meza)*, 467 F.3d 874, 878 (5th Cir. 2006)). "[I]f a trustee could amend a Chapter 13 plan after the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision [11 U.S.C. § 1328] would be eviscerated." *Id.* (quoting In re Casper, 154 B.R. 243, 247(N.D. Ill. 1993). "Accordingly, the general rule is that if a debtor completes all plan payments before the trustee seeks modification, § 1329(a) bars the modification." *Id.*

Here, the Debtors completed their plan payments in October 2023. (Tr. 6, line 8). The Trustee acknowledged that fact when he filed his November 1, 2023, notice of completion of plan payments, which informed the Debtors that "you have paid sufficient funds to complete your case."[13] (Dckt. 43). And on December 5, 2023, the

[13] The case law draws a distinction between a debtor's completion of plan payments and the trustee's filing of a notice memorializing that fact. *See In re Zisumbo*, 519 B.R. 851, 859 (Bankr. D. Utah 2014) ("The plain reading of § 1329(a) unambiguously provides that any modification must be before the completion of payments under the plan, not when the Trustee submits a Notice of Completed Plan Payments or the debtor seeks a verification and request for a discharge."); *In re Ezzell*, 438 B.R. 108, 115 (Bankr. S.D. Tex. 2010) (noting that "it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee"). So, November 1,

Debtors received a discharge, which necessarily means that their plan payments were complete: § 1328(a) states that "the court shall grant" a discharge "as soon as practicable after completion by the debtor of all payments under the plan[.]" 11 U.S.C. § 1328(a). To permit the Debtors, the Trustee, or an unsecured creditor to modify the Debtor's plan at this juncture would be to contravene the plain language of § 1329(a). As of October 2023, the only attorney representing the Debtors in connection with the explosion case was Howard Spiva. He did not file suit. It is not clear that he gave the Debtors any reason to think they should file amended schedules in the bankruptcy court before they had made their last plan payment in October 2023[14]. After that, plan modification was time-barred under 11 U.S.C. § 1329(a).

Second, § 1329(c) provides that a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."[15]

---

2023, is the latest possible date on which plan payments could have been completed, but the Debtors could have completed them earlier.

[14] In fact, it was not until February 16, 2024 that the Debtors were ever asked to amend their schedules for any reason, and that was to disclose the June 2023 auto accident claims. (Dckt. 56, p. 5).

[15] The temporal limitations of § 1329(c) thus mirror those in § 1322(d)(2). Under § 1322(d), a below-median debtor's Chapter 13 plan "may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve

11 U.S.C. § 1329(c). "Section 1329(c) thus 'defines the temporal window within which modified payments . . . may be made by reference to the applicable commitment period.'" *In re Goldston*, 627 B.R. 841, 854 (Bankr. D.S.C. 2021). "[T]he modification cannot extend the payment period beyond five years after the first plan payment was due, and cannot extend the original commitment period of the debtor's disposable income except for cause." *In re Scarver*, 555 B.R. 822, 827 (Bankr. M.D. Ala. 2016).[16]

Here, the Debtors' applicable commitment period was 60 months, or five years. It is not evident from the record when exactly the first payment was due.[17] But

---

a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2). Section 1329(c) similarly prohibits a modification that extends a plan beyond a below-median debtor's applicable commitment period except for cause, and in any case not for a period longer than five years. "Because the applicable commitment period for an above-median debtor is five years, the [§ 1329(c)] limitation now applies only in the case of a below-median debtor, for whom the applicable commitment period is three years." *Chapter 13 Practice & Procedure* § 11:11. This deliberate parallelism underscores the importance Congress placed on the maximum duration of a Chapter 13 plan.

[16]*See also McKinney v. Russell*, 567 B.R. 384, 390 (M.D. Ala. 2017) ("[A]s with the confirmation of a plan in the first instance, the court may not approve a modified plan that requires payments to be made more than five years after the first payment came due."); *In re Nelson*, 646 B.R. 810, 816 (Bankr. E.D. Wis. 2022) ("[A] request to modify a confirmed plan that expressly results in a plan payment period exceeding 60 months fails to comply with 11 U.S.C. § 1329 and cannot be granted."); *In re Talison*, 597 B.R. 87, 88 (Bankr. E.D. Mich. 2019) ("[A]pproval of this proposed plan modification is impermissible, because the plan as modified would exceed the five-year limit in 11 U.S.C. § 1329(c)."). *Cf. In re Humes*, 579 B.R. 557, 560 (Bankr. D. Colo. 2018) ("Debtors should not have to make more than sixty payments[.]").

[17] Courts disagree as to whether the language "the time that the first payment under the original confirmed plan was due" in § 1329(c) refers to the date the first pre-confirmation payment was due under § 1326(a)(1) or to the date the first post-confirmation payment was due. Judge Dalis held that "[t]he appropriate time from which to calculate the length of the Chapter 13 plan is the date at which the debtor is first obligated to begin making payments" under § 1326(a)(1). *Baxter v. Evans (In re Evans)*, 183 B.R. 331, 332–33 (Bankr. S.D. Ga. 1995) (Dalis, J.). Judge Dalis

given the August 23, 2019, confirmation date, the five-year period must have ended no later than August, 2024. Thus, more than five years have elapsed since the first plan payment was due, and § 1329(c) likewise bars plan modification.

Because the Debtor's confirmed plan can no longer be modified, this Court has held under similar facts that reopening a case would be futile. See, *In re: Koffah*, 676 B.R. 907 (Bankr. S.D. Ga. 2025)(Coleman, J.). In *Koffah*, this Court adopted the reasoning of Judge Barrett in her 2013 decision in *In re D'Antignac*, No. 05–10620, 2013 WL 1084214 (Bankr. S.D. Ga. Feb. 19, 2013) (Barrett, C.J.). In *D'Antignac*, the debtors' Chapter 13 plan was confirmed on August 8, 2005. Three years later, on August 22, 2008, the wife-debtor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for a cause of action that purportedly arose in June 2008. The debtors received their bankruptcy discharge on November 5, 2008, and the case was closed on February 5, 2009. In 2010, the wife, after receiving from the EEOC a right to sue notice, sued her employer in the

---

reasoned that to do otherwise would be to "impose an additional burden on . . . debtors, not authorized by the Code, requiring the making of pre-confirmation payments due pursuant § 1326(a)(1), but not counting those payments under the term set forth in the plan." *Id.* at 333. In consequence, "[t]he five-year maximum repayment period imposed by [§ 1322(d)] and § 1329(c) would be impermissibly extended by the amount of time passing between filing and confirmation." *Id.* His view has gained wide acceptance. *See Humes*, 579 B.R. at 560–61 ("Debtors should not have to make more than sixty payments because the confirmation process does not dovetail with the payment requirements."); *In re Schuster*, No. 10–01175, 2015 WL 9282447, at *4 (Bankr. D.D.C. Dec. 18, 2015) ("Like the court in *Evans*, I conclude that when measuring the five-year maximum duration of a modified plan, the measurement runs from the date on which the first payment was due under 11 U.S.C. § 1326(a).").

District Court. Her employer moved for summary judgment, arguing, among other things, that the wife was judicially estopped from pursuing the discrimination lawsuit based on her failure to amend her bankruptcy schedules to disclose the cause of action. In 2012, the wife moved to reopen the bankruptcy case to make that disclosure.

Judge Barrett denied the wife's motion to reopen, for at least two reasons. First, "a [C]hapter 13 bankruptcy plan cannot provide for payments that extend beyond 5 years." *Id.* at *5. In *D'Antignac*, the wife "did not file her motion to reopen the case until more than seven years after the first payment became due under her [C]hapter 13 plan and more than three years after her case was discharged and closed." *Id.* Thus, by operation of §§ 1322(d) and 1329(a), "no additional assets [could] be administered under [the] [C]hapter 13 plan." *Id.* Second, it was "unknown if and when there [would] be any proceeds from [the] cause of action to distribute." *Id.* at *7. Judge Barrett explicitly declined to address whether the debtor in *D'Antignac* acted in good faith or bad faith. *Id.* at *7–8.

Judge Barrett decided *D'Antignac* in 2013. Since then, at least two other bankruptcy courts have reached the same conclusion in similar circumstances. *See In re Maldonado*, 646 B.R. 917, 920–22 (Bankr. D. Utah 2022) (holding that "even if the [c]ourt reopened their bankruptcy case, the [d]ebtors could not seek a modification of their plan because it [was] . . . beyond the five-year limitation of §§

1322 and 1329."); *In re Ingram*, 531 B.R. 121, 125–26 (Bankr. D.S.C. 2015) (finding "no potential benefit [to creditors] in reopening" because "[C]hapter 13's 60-month time limitation ha[d] long expired," so the debtors could not "propose an amended, approvable plan").

If the Debtors' Motion to Reopen was based on a proposed plan modification, the court would deny that relief pursuant to *In re Koffah*, *supra*, and *In re D'Antignac*. But here, the Debtors have not indicated in their motion an intention to seek a modification of their plan pursuant to 11 U.S.C. § 1329(c). Instead, as they did with the non-exempt proceeds from the auto accident case, they simply propose to voluntarily turn a portion of those funds[18] over to the trustee for distribution to creditors. And while plan modification is now time-barred under both 11 U.S.C. § 1329(a)(due to the completion of plan payments in October 2023) and 11 U.S.C. § 1329(c)(due to the 5 year plan duration limit), it does not appear the disclosure of the Debtors' cause of action against Symrise, Inc. would have ever supported modification.

D. <u>Was Plan Modification Possible If the Cause of Action Had Been Disclosed in January 2023?</u>

[18] The balance of allowed unsecured claims that remain unpaid is $50,450.23 (Dckt. 79, p.3)

Because Mr. Belton's cause of action was acquired "after the commencement of the case but before the case [was] closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever first occurs," did his creditors have a right to share in that asset. In theory. But a debtor can only be compelled[19] to share that post-confirmation asset through *plan modification*. As the Court has noted, modification of the Debtors' plan is now time-barred.

But what if the debtors had disclosed the cause of action in January 2023,[20] or shortly thereafter, when they first sought legal advice regarding the explosion case? Would the Court have approved a modification of the Debtors' plan? Possibly, but only in a contingent sense. A cause of action is a property interest within the meaning of 11 U.S.C. § 541(a)(1) and § 1306(a)(1). But until it has been reduced to funds in the hands of the debtor, it cannot support a modification to increase *payments* to creditors. Payments require money. If the cause of action is not settled (or a judgment paid), within the five-year limit for a plan duration under 11 U.S.C. § 1329(c), modification is not permitted. A court might modify a plan (but only

---

[19] As we saw with the supplemental distribution of the automobile accident claims, a debtor may in certain circumstances voluntarily make a distribution from a post-confirmation asset without modifying his plan, if the trustee consents and the court permits the same.

[20] It is not clear when Symrise, Inc. was identified as the alleged tortfeasor in the explosion case. Mr. Belton testified that the explosions occurred on property adjoining his worksite, but that it was "maybe a football field away, or maybe a little more than that". (Tr.10, lines 5-6). Even if Symrise, Inc. was quickly identified as the owner of the property where the explosions occurred, it surely would be a more complicated inquiry as to whose negligence the explosions should be attributed.

before completion of plan payments under a confirmed plan) to say that *if* the debtors receive payment on the cause of action in sufficient time to make a distribution to creditors, the creditors should share in the non-exempt portion of such funds. But the bankruptcy court would not be authorized to confirm a plan modification that allowed such additional funds to be paid to creditors beyond the five-year limit for plan duration.

Another example illustrates the practical limits of 11 U.S.C. § 1306(a)(1). What if the cause of action arose one month or two months "before the case is closed, dismissed, or converted." In that scenario there is hardly enough time to even retain counsel, much less obtain a settlement to share with creditors. In that case, this additional "property of the estate" need not be shared with creditors. The same is true under the facts of this case. Even if the district court litigation was filed shortly after January 2023, there is no reason to believe that it would have been concluded within the five-year plan modification deadline of August 2024. So, the Beltons' creditors were never entitled to share in that "asset". The failure to disclose that cause of action cost the creditors nothing.

E. <u>May the Case Be Reopened for Reasons Other Than Plan Modification</u>?

The Debtors seek to reopen their case to amend their schedules to disclose the cause of action against Symrise, Inc. Is this a sufficient basis under 11 U.S.C. § 350(b)? The Court has found one case addressing this question and reaching a

conclusion contrary to that of *D'Antignac,* namely: *In re Calixto*, 648 B.R. 119 (Bankr. S.D. Fla. 2023). In *Calixto*, the debtor filed a Chapter 13 petition in 2017. In 2018, her plan was confirmed. Three years later, in 2021, she slipped and fell at premises owned by Gulfstream, giving rise to a personal injury cause of action. In 2022, she completed plan payments—paying unsecured creditors a 100% dividend—and received her discharge in the bankruptcy case. A month later, she sued Gulfstream in state court. She never amended her bankruptcy schedules to disclose the post-confirmation claim. Gulfstream moved for summary judgment in the state-court case, arguing that the debtor was judicially estopped from pursuing the case. The debtor then sought to reopen the bankruptcy case to disclose the personal injury claim.

The bankruptcy court granted the debtor's motion to reopen, reasoning that reopening would benefit the debtor and would not prejudice any other parties. The debtor would benefit because reopening would "enable her to satisfy a procedural technicality under binding Eleventh Circuit case law, the result of which may allow her to pursue her litigation claim on the merits against Gulfstream in state court." *Calixto*, 648 B.R. at 128. Elaborating on that "procedural technicality," the court explained that "[i]n the Eleventh Circuit . . . case law is clear that a [C]hapter 13 debtor has a 'continuing duty' to amend her bankruptcy schedules to disclose a post-confirmation litigation claim." *Id.* at 126. In other words, reopening would allow the

debtor to fulfill that duty by disclosing to the bankruptcy court her claim against Gulfstream. Unsecured creditors would not be prejudiced since they were paid in full. And Gulfstream would not be prejudiced because it would merely have to defend the claim on the merits in state court. *Id.* at 127–28. Balancing the equities, the court found that the debtor established sufficient cause to reopen under § 350(b).

Here, the Court disagrees with *Calixto* and finds that reopening the case merely to disclose the cause of action is not a sufficient ground. This is not the substantive relief contemplated by the language of 350(b).

May the Debtors' case be reopened to make a supplemental distribution without modification? The Court permitted this very thing with the automobile accident claims upon Debtors' motion in 2024, with the trustee's blessing. (Dckt. 60, 66). With regard to the pending Motion to Reopen, the trustee has likewise expressed a willingness to be reappointed as trustee and to "administer" any such additional assets for the benefit of creditors. (Tr. 32). This might be a generous offer by the Debtors, but they are not required to do so under *Waldron*, as explained. Further, the Court declines to keep this case open for the duration of the hotly contested district court litigation, which might take years to conclude. Moreover, it is not necessary to reopen the case to approve the firm of Manly Shipley, LLP to represent the Debtors in the district court litigation. While this Court often approves employment applications for personal injury counsel to represent debtors during the

pendency of a plan, it is not strictly required by 11 U.S.C. § 327(e).[21] Instead, the practice allows settlements of such claims to be brought before the court for approval, and in that context, fees sought by personal injury counsel are disclosed pursuant to 11 U.S.C. § 329(a). In this case where the employment of Manly Shipley LLP did not occur until August 2024, neither approval of their employment nor their fees are required by the Bankruptcy Code or Rules. Accordingly, these matters will not support reopening this case. Finally, there is no basis for this Court to approve any settlement of the district court litigation, so reopening on that basis is likewise rejected.

F. District Court's Application of Judicial Estoppel.

District court counsel acknowledges that one reason for now seeking to reopen the bankruptcy case is to avoid an adverse ruling on the pending district court Motion for Summary Judgment, which the defendant based partly on the doctrine of judicial estoppel. (Tr. 5, 30). The Court has also been made aware that the district court litigation (Belton v. Symrise, Inc. Case No. 2:24-cv-131) has been stayed by Order[22]

---

[21] Some courts hold that 327(e) only applies to the trustee's employment of a professional. *See, e.g., In re Scott*, 531 B.R. 640, 645 (Bankr. N.D. Miss. 2015)("Nothing in the Bankruptcy Code suggests that the term 'trustee' used in § 327(e) is intended to include a chapter 13 debtor."); *In re Bowker*, 245 B.R. 192, 200 n.8 (Bankr. D.N.J. 2000)("Section 327 which requires prior court approval for retention of professionals by a trustee . . . does not apply to a chapter 13 debtor[.]").

[22] "Because Plaintiffs' motion to reopen their Chapter 13 case in the Bankruptcy court is pending, and the outcome would be especially relevant to the Court's evaluation of Defendant Symrise's

of July 31, 2026, by Hon. Lisa Godbey Wood, pending this Court's ruling on the Debtors' Motion to Reopen.

When the Court heard the Motion to Reopen on July 1, 2026, it did not have the benefit of Judge Wood's Order of July 31, 2026. While neither the Debtor nor the trustee asked the Court to make any inquiry regarding "inadvertence or mistake" that might mitigate against judicial estoppel based on the non-disclosure, the Court did ask Mr. Belton to testify:

> "Why don't we take a little testimony about the type, the chronology, the injury, hospitalizations, causation and see if we can narrow down when and if the debtor could have or should have disclosed his cause of action to the bankruptcy court. . . So, I'm basically just interested in the chronology of --- I can see the chronology of our bankruptcy case, but the type of injury, when the symptoms arose, what the symptoms were, hospitalizations and then contacts with lawyers . . . about that.
>
> (Tr. 8-9)

Mr. Belton was forthcoming about each of his contacts with lawyers handling the potential claims against Symrise, Inc. But as mentioned above, it is clear that all the lawyers that touched the Debtors' files were not communicating with each other.

---

judicial estoppel argument, this case is hereby STAYED and ADMINISTRATIVELY CLOSED pending resolution of Plaintiffs' motion to reopen their bankruptcy case".

The Court was left with the impression that the Beltons are not to blame for the failure to amend their bankruptcy schedules to disclose the cause of action against Symrise, Inc. But the Court was not deciding the issue of judicial estoppel, only whether to reopen the bankruptcy case. And the testimony from the July 1, 2026, hearing did not answer every question that might bear on judicial estoppel.

Further, the Court is aware that a ruling on the asserted defense of judicial estoppel is to be made by the court in which such defense was raised. Nevertheless, to the extent that the Court's consideration of the Motion to Reopen bears on the judicial estoppel defense raised by Symrise, it may be useful for the Court to elaborate on the specific rules relating to a debtor's duty of disclosures generally, and then any duty to amend schedules to disclose post-confirmation causes of action. As discussed, *Waldron* confirmed that such claims were property of the estate. The Eleventh Circuit in *Waldron* also stated the reason for such disclosures:

> The disclosure of post-confirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors. A confirmed plan may be modified at the request of the debtor, the trustee or the holder of an allowed unsecured claim to "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or to] (2) extend or reduce the time for such payments." 11 U.S.C. §

> 1329(a). Payments under a plan are based on the debtor's disposable income when the plan is confirmed. *Id.* § 1325(b)(1)(B). When a debtor discloses assets acquired after confirmation, creditors may move the bankruptcy court to modify the plan to increase payments made by the debtor to satisfy a larger percentage of the creditors' claims. *Id.* § 1329(a)(1).
>
> *Waldron* at 1245.

Section § 521(a)(1) and Bankruptcy Rule 1007(b) itemize the documents that a debtor must file at the outset of a bankruptcy case, including schedules of assets, liabilities, income, and expenses. *In re Boyd*, 618 B.R. 133, 148–49 (Bankr. D.S.C. 2020). And no one disputes that "a debtor who has a duty to disclose under § 521(a) at the beginning of the case . . . but does not do so, continues to have that duty." *Id.* at 149. Bankruptcy Rule 1009(a)(1) facilitates that continuing duty: it provides that "[a] debtor *may* amend a voluntary petition, list, schedule, or statement at any time before the case is closed." Fed. R. Bankr. P. 1009(a)(1) (emphasis added). That Rule, as the Advisory Committee Notes put it, adopts a "permissive approach . . . to amendments of voluntary petitions and accompanying papers." Fed. R. Bankr. P. 1009 Advisory Comm. Notes. As to property acquired post-petition, however, the

Code and the Rules have little to say. Section 521(f)(4) and Bankruptcy Rule 1007(h) require post-petition disclosures only in limited circumstances. *Boyd*, 618 B.R. at 149 n. 9. "Noticeably, neither Rule 1007(h) [n]or any other [B]ankruptcy [R]ule indicates that a [C]hapter 13 debtor must file a supplemental or amended schedule for . . . property acquired post-petition that become[s] part of the estate as a result of § 1306(a)." *Id.* at 149. And nowhere do the Code and Rules explicitly mandate disclosure of property acquired *post-confirmation*. *Id.* at 150. Turning to the case law, the Eleventh Circuit has at times recognized a continuing duty to disclose "changes in [the debtor's] financial situation during the pendency of [the] bankruptcy." *Waldron*, 536 B.R. at 1244. As surveyed in *Waldron*, those precedents include *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir. 2003); and *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339 (11th Cir. 2006). After surveying those precedents, the Eleventh Circuit in *Waldron* recognized a "postconfirmation duty of disclosure for Chapter 13 debtors," but it delineated that duty narrowly. A bankruptcy court, the Eleventh Circuit explained, "has the *discretion*, under Rule 1009, to require a debtor to amend his schedule of assets to disclose a new property interest acquired after the

confirmation of the debtor's plan." *Id.* at 1246 (emphasis added). What's more, the Eleventh Circuit stated that "[w]e do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13, as "[n]either the Bankruptcy Code nor the Bankruptcy Rules mention such a duty." *Id.* That sentence is somewhat ambiguous. Did the Eleventh Circuit mean, as literally written, that a debtor has no free-standing duty to disclose *any* post-confirmation asset, even a substantial one? Or did the court mean that a debtor has no free-standing duty to disclose *every* post-confirmation asset—in other words, that a debtor must disclose substantial assets but not de minimis ones?

Finally, in *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010), decided two years after *Waldron*, the Eleventh Circuit acknowledged the possibility that its "current case law mandating a continuing statutory duty to disclose can be traced back to dicta in *Burnes* and incorrectly perpetuated as law by subsequent cases." *Robinson*, 595 F.3d at 1274. But, the court explained, "even if the reasoning in *Burnes* is dicta, it became the law of this circuit in the holdings" of *De Leon*, *Ajaka*, and *Waldron* by virtue of the Eleventh Circuit's "prior precedent rule." *Id.* The court in *Robinson* made no mention of the narrow holding in *Waldron*. Beyond

the Eleventh Circuit's jurisprudence, bankruptcy commentators continue to debate the existence and scope of any continuing duty to disclose, including in a recent issue of the American Bankruptcy Institute Journal, which featured both sides of the debate. *See* Hon. Elizabeth L. Gunn and Nisha R. Patel, *To Tell or Not to Tell Isn't Really a Question: A Debtor's Duty to Disclose*, 44-OCT Am. Bankr. Inst. J. 30 (Oct. 2025) and David Cox, *"What Happens Post-Petition Stays Post-Petition!"*, 44-OCT Am. Bankr. L. Inst. J. 31 (Oct. 2025).

In any event, even if a Chapter 13 debtor has a continuing duty to disclose a substantial post-confirmation asset, the case law nowhere outlines the precise contours of that duty. When, for example, must a post-confirmation cause of action be disclosed? When settlement discussions indicate there is actual value? The cases cited above give little or no guidance on that point. And, as addressed above (Section D), does a cause of action that arises in the 57th or 58th month of a plan have to be disclosed at all if no plan modification is possible at such a late date. Is a cause of action even substantial if the Defendant finds it meritless?

The Court does not find that the Debtors in this case intentionally violated any such duty to disclose, based on the record presented to this Court and a thorough review of the docket in this case. In considering the judicial estoppel issue, the District Court will be called upon to determine (1) whether there was even a duty to

disclose the cause of action by the time plan modification was time barred (possibly not) and (2) whether the Debtors' failure to disclose was due to "inadvertence or mistake" (which would arguably include bad advice by counsel) under the Supreme Court's recent decision in *Keathley v. Buddy Ayers Construction, Inc.*, 608 U.S. 647, 146 S.Ct. 1532 (2026), as disclosed below.

The decision in *Keathley* involved facts similar to the Beltons' case. While Mr. Keathley was still in a chapter 13 bankruptcy case, he was involved in an accident with a driver employed by Buddy Ayers Construction. Keathley retained a personal injury attorney and informed his bankruptcy counsel that he intended to sue Buddy Ayers Construction. Neither Keathley nor his bankruptcy counsel disclosed the cause of action to the bankruptcy court, and after suit was filed in district court the defendant raised the issue of judicial estoppel. Keathley immediately filed an amended schedule and disclosed the cause of action. Relying on Fifth Circuit precedent the district court dismissed the civil suit on judicial estoppel grounds finding that because Keathley "knew of the facts underlying his claims and hypothetically had a motive to conceal", the omission was neither inadvertent or a mistake. The Fifth Circuit affirmed. On appeal to the Supreme Court, the Court held:

> "To determine whether an omission of a claim in the bankruptcy context was inadvertent or mistaken for purposes of judicial estoppel,

> courts should look to the totality of the circumstances surrounding the omission; the Fifth Circuit erred by artificially narrowing its inquiry to whether the debtor had knowledge of the underlying facts or a potential motive to conceal the claim." *Id.* at 1538-1540

*Keathley* rejected the Fifth Circuit's rule on judicial estoppel as too rigid. "The Fifth Circuit's rule allows courts to consider only two circumstances --- whether the debtor knew of the underlying facts and whether there was a potential motive to conceal --- and does not permit courts to look at any other evidence tending to show the omission was inadvertent. That rigidity is out of step with equity." *Keathley*, supra, at 648.

But the Eleventh Circuit had already taken a more liberal approach to judicial estoppel in a number of cases. In *Slater v. United States Steel Corp.*, 871 F. 3d 1174 (11th Cir. 2017), the Court overruled its "prior precedent approving the inference that a plaintiff intended to make a mockery of the judicial system solely because he failed to disclose his civil claim in his bankruptcy. Instead, district courts should consider all the facts and circumstances of the case to determine whether the debtor had the requisite intent". *Id.* at 1189.

In *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635 (11th Cir. 2019), the court observed in applying the doctrine of judicial estoppel: "There are many facts and circumstances bearing on Smith's intent, beginning with when she learned that she

had a legal claim against Defendants." *Id.* at 645. Regarding the Beltons' claims against Symrise, Inc., during the eighteen months that the Debtors were represented by attorney Howard Spiva, the record is silent as to what action or investigation he undertook on their behalf, or whether he ever gave them hope of a substantial recovery that would have suggested a need to amend their bankruptcy schedules even if they had been aware of that duty[23]. If the Debtors had not been advised by Spiva of the merits of their claims against Symrise, Inc. by October 2023, when they had completed their plan payments, plan modification was time-barred, so disclosure would not be required by that date. The Eleventh Circuit in *Smith v. Haynes & Haynes, P.C., supra*, addressed another issue in judicial estoppel:

> "Then there is the important question of motive. The district court mentioned in his written order that Smith had denied motive to deceive the court, but in rejecting that assertion the court mentioned only the supposed inconsistencies in Smith's positions. The district court did not identify a motive for Smith's failure to update her asset schedule." *Id.* at 646.

[23] It is not clear why the Debtors' counsel did not also disclose the potential claims arising from the November 2022 explosions when they disclosed the merely potential auto accident claims of June 2023 in the amended schedules filed on February 26, 2024. One likely explanation is that a different lawyer, Howard Spiva, represented the Debtors and he was not in touch with bankruptcy counsel. Also, the Debtors did not retain the Manly Shipley, LLP firm until August 2024.

As discussed above, the Debtors were not able to seek modification of their plan until the claims against Symrise resulted in money that could be paid to creditors. They may recover funds in the future, but it would not have occurred in time for creditors to benefit in this case. Thus, there was no motive not to disclose the cause of action.

As mentioned, the Court had an opportunity to evaluate Mr. Belton's demeanor, credibility, communication skills, and memory. The Court finds no indication that Mr. Belton intentionally failed to disclose his November 2022 cause of action to his bankruptcy counsel. But that inquiry, and other factual issues under judicial estoppel are for the District Court to decide.

While the Court has not been asked to weigh in on the judicial estoppel question to be answered by the District Court, this Court would note that its decision *not* to reopen the case has no bearing on judicial estoppel. To reiterate, the bases for reopening asserted by the Debtors would not provide substantive relief to the Debtors or a benefit to creditors. Plan modification is time-barred under the five-year rule of 11 U.S.C. § 1329(c) and was earlier time-barred after the Debtors' completion of plan payments under 11 U.S.C. § 1329(a). Nor is there a post-petition asset under 11 U.S.C. § 1306(a)(1) that is available, or would have been available based on an earlier disclosure, for distribution to creditors. Appointment of counsel to represent the Debtors in the district court litigation is unnecessary under 11 U.S.C.

§ 327(e). Approval of any settlement with Symrise, Inc. does not now require this Court's approval. Approval of counsel's contingency fees is not required to be made by this Court 11 U.S.C. § 329. In short, reopening the case under 11 U.S.C. § 350(b) is unnecessary to "administer assets, to accord relief to the debtor, or for other causes". No creditors are prejudiced by the Court's decision not to reopen because they would not have shared in any recovery against Symrise, Inc. even if disclosure had been made in 2023.

Because Judge Wood's order of July 31, 2026, suggested that this Court's ruling on the Motion to Reopen "would be especially relevant to the Court's evaluation of Defendant Symrise's judicial estoppel argument", the Court has made an effort to clarify some of the rules surrounding a debtors' duty to disclose causes of action in the context of the bankruptcy, the timing of such disclosures, and the deadlines for plan modification. But the decision not to reopen under 11 U.S.C. § 350(b) does not weigh in favor of judicial estoppel. Nor does the Court's decision not to reopen the Beltons' bankruptcy case answer the question the District Court should now answer: was the Debtors' failure to amend their schedules prior to October 2023 (after which modification was time barred 11 U.S.C. § 1329(a) unavailing to creditors under 11 U.S.C. § 1306) the result of "inadvertence or mistake" by the Debtors, or their counsel on whom they relied for legal advice. If so, judicial estoppel would not be a defense. The position of Symrise, Inc. that non-

disclosure of the cause of action is necessarily fatal to the Beltons' district court litigation is incorrect.

But, as Judge Barrett explained in *D'Antignac*, a "bankruptcy court is not the appropriate forum to determine [a] judicial estoppel argument."[24] *D'Antignac*, 2013 WL 1084212, at *7. *See also Matter of Dewberry*, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001) (Davis, J.) ("It seems self-evident that if [judicial estoppel] is invoked to protect the integrity of the judiciary, then it must be invoked in the [c]ourt in which the apparent self-serving contradiction occurred and in which the defense is first asserted."). The District Court must weigh the equities.

---

[24] To be sure, the district court may consider the facts and circumstances of this bankruptcy case in deciding whether the Debtors are judicially estopped from pursuing their personal injury claims against Symrise, Inc. And the district will have the benefit of applying the arguably more relaxed standard established in the recent Supreme Court decision in *Keathley v. Buddy Ayers Construction, Inc.* 608 U.S. 647 (2026) In *Slater v. United States Steel Corp.*, the Eleventh Circuit ruled, in an en banc decision, that a federal district court cannot infer "that a plaintiff intended to make a mockery of the judicial system simply because he failed to disclose a civil claim." *Slater*, 871 F.3d at 1185. In so holding, the Eleventh Circuit overruled portions of its precedents *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003) and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). Instead, the Eleventh Circuit held in *Slater*, the court should consider certain factors: "We hold that to determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case. When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered." *Slater*, 871 F.3d at 1185. This "inquiry allows a district court to consider any findings or other actions by the bankruptcy court that might help in determining whether the debtor purposely intended to mislead the court and creditors." *Id.* at 1186.

## IV . Conclusion

The Court may grant a Motion to Reopen in the exercise of its discretion. "The decision to reopen should be made on a case-by-case basis based on the particular circumstances and equities of [the] case and should be left to the sole discretion of [the] bankruptcy court." *Id.* (quoting *Diaz-Nieves v. Irizarry (In re Irizarry)*, No. 6:10-bk-18876-KSJ, 2012 WL 592886, at *1 (Bankr. M.D. Fla. Feb. 17, 2012)). The Court finds insufficient grounds to do so for the limited purposes urged by the Debtors.

The Debtors are time-barred from modifying their plan by virtue of the five-year rule of 11 U.S.C. § 1329(c). *In re Koffah*, 676 B.R. 907 (2025). Nor would disclosure, even if it had been made in January 2023 after the Debtors had consulted counsel about the explosions that caused Mr. Belton's injuries, support a modification. A cause of action is not disposable income. It may *become* disposable income when a case is settled, or a verdict is reduced to payment from the Defendant. But until the Debtors have that money in hand, a proposed modification by the trustee or a creditor, could not be confirmed unless conditioned upon receipt of the settlement proceeds before the five-year limit under 11 U.S.C. § 1329(c). Creditors were not prejudiced by the debtors' failure to amend their schedules.

The Court declines to exercise its discretion to reopen the case for the other limited purposes asserted by the Debtors. In particular, reopening the case so that the Debtors can disclose the cause of action against Symrise, Inc. and thereby defend against the judicial estoppel argument is an insufficient and unnecessary ground. That issue can still be argued without reopening the case.

For all the reasons set forth above, the Debtors' Motion to Reopen pursuant to 11 U.S.C. § 350(b) is DENIED. The Court will enter a separate Order.

Dated at Savannah, Georgia, this 30th day of September, 2026.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia